IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00927-WDM-BNB

RON HUBBARD,

      Plaintiff,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, a/k/a USAA,

      Defendant.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

---

Miller, J.

      This matter is before me on the motion for summary judgment filed by defendant United Services Automobile Association ("USAA") (doc no 45).  I have reviewed the parties' written arguments and find oral argument is not required.  For the reasons that follow, the motion will be granted.

<u>Background</u>

      As an initial matter, I note that Plaintiff failed to follow my Pretrial and Trial Procedures with regard to his response to the motion for summary judgment.  He did not provide a response to USAA's statement of undisputed facts, nor did he include a statement of additional undisputed (or disputed) facts.  In addition, he did not provide specific references to record material to establish his facts, disputed or undisputed.  As a result of these omissions, I will accept the facts as set forth in USAA's brief as undisputed except to the extent that I can determine the existence of a genuine dispute

raised in the response brief.

Plaintiff was employed by USAA in various positions from December 1991 until his voluntary resignation around July 2004. His claims in this lawsuit primarily relate to the failure of USAA to promote him to positions for which he applied within the company after 2001 and retaliation.

USAA is a financial services business providing insurance and financial products for members of the military and their families. Plaintiff is a white male, whose date of birth is August 8, 1951. He worked in several positions at USAA and had the title of Casualty Claims Adjuster at the time of his resignation. From 2001 to 2003, Plaintiff applied for several positions at USAA but was either not interviewed or not selected. The last position that he applied for was a Casualty Claims Examiner position, which was posted in September 2003, and for which there were apparently two openings. Plaintiff and several other candidates were selected for interviews. Before the interview, a compilation of information for each candidate was prepared, which included the years of experience, performance evaluations and manager feedback, education, and other experience or training. All candidates were asked the same pre-set questions and the interviewers assigned numerical scores for each objective and attribute to be assessed through the interview.

Two other candidates were selected for the position. One candidate is a Hispanic male, apparently younger than Plaintiff, and the other is female. The two finalists and Plaintiff all had relatively similar qualifications. All three had overall

2

performance ratings of "Exceeds Expectations" ("EE")[1], had been hired at USAA in

1990, 1991 (Plaintiff), and 1995, and had post-secondary degrees (Plaintiff and one

finalist both had MS degrees in management).  The two finalists both scored higher in

the interview than Plaintiff.  In addition, as part of the selection process, the hiring

managers audited several claims files for each candidate.  These managers

determined that the quality of Plaintiff's claims files was not as strong as the other two

finalists.

When informed that he did not receive the position around December 2003,

Plaintiff expressed unhappiness to his manager, Debbie Montgomery (n/k/a Debbie

Mitchell), stating that the individuals who had been selected for promotions in jobs he

had applied for since 2001 were "younger, they're primarily female and Hispanic . . .

They're not hiring anybody my age.  Nobody has been promoted at my age in all of this

time period."  Montgomery reported to the two hiring managers that Plaintiff believed

only that "only minorities, Hispanics, and younger people were being selected."  One of

the hiring managers, Wendy Wallen, understood Montgomery to say that Plaintiff had

used the term "Orientals," which she found inappropriate.  Wallen reported the

comment to her Director.  An investigation by Human Resources concluded that Wallen

had misunderstood the comment and the matter was closed.

On or about December 11, 2003, a human resources advisor called Plaintiff and

left a message to follow up on Plaintiff's concerns.  Plaintiff responded with a phone

---

[1]The evaluation system included the following: "Not Rated," "Below
Expectations," "Partially Meets Expectations," "Meets Expectations," "Exceeds
Expectations," and "Far Exceeds Expectations."

message saying it was not necessary for her to call him.  The advisor left another message saying that the company was an EEO employer and to contact a Director if he had any questions about his nonselection.  Plaintiff did not contact any one at this time.

Shortly thereafter, around January 2004, Plaintiff was given a performance evaluation in which his overall rating was "Meets Expectation" ("ME"), which he signed. He alleges that he learned thereafter from Montgomery that although she had initially given him an overall rating of EE, her supervisor, Karen Fletcher, had recommended lowering it to the ME rating based on evaluative data that Montgomery had not yet received.[2]  In addition, Plaintiff had been rated ME on five of the nine parameters upon which the evaluation was based, which made an overall ME rating more appropriate. Montgomery did not oppose the change.

Plaintiff also contends that around this time, in February 2004, he learned for the first time of Wallen's complaint concerning her belief that he had made an inappropriate racial comment.  Plaintiff met with Dana Hagood, the Executive Director of Human Resources Operations, on March 3 and 5, 2004 to discuss the complaint. Hagood confirmed that the complaint had been made, but that it was determined to have been a misunderstanding.  At the second meeting with Hagood, Plaintiff again expressed his unhappiness and belief that others were being selected for promotions instead of him because of his age.  Hagood offered to investigate the reasons for Plaintiff's nonselection for other positions and told Plaintiff that he did not want Plaintiff

---

[2]Fletcher made the same recommendation concerning another of Montgomery's employees.

to leave the company.  Plaintiff declined Hagood's offer to review the previous evaluations and interviews.  Plaintiff left USAA a few months later for a position at another company, but did not claim that discrimination had played a role in his departure.

Plaintiff filed a charge of discrimination with the EEOC on September 28, 2004. After exhausting his administrative remedies, he brought this lawsuit, alleging the following claims for relief: (1) retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), C.R.S. § 24-34-402 and state common law; (2) age discrimination under the ADEA; (3) reverse gender discrimination in violation of Title VII, C.R.S. § 24-34-402, and common law; and (4) reverse race discrimination in violation of Title VII, C.R.S. § 24-34-402, and common law.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the

nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence.  In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973), provides the framework for assessing indirect, or circumstantial, evidence.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).  *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-804.

Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination.  *Kendrick*, 220 F.3d at 1226.  The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff's rejection." *Id.* at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).  *See also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination.  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).  The plaintiff must show pretext by demonstrating that the defendant was

more likely motivated by a discriminatory reason or that the defendant's proffered reason "is unworthy of credence." *Id.* (quotation omitted).  *See also Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are:  (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

The burden shifting approach also applies to a claim of retaliation.  To establish a *prima facie* claim under Title VII or the ADEA for retaliation, a plaintiff must establish three elements: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219, 1226 (10th Cir.2006).

<u>Discussion</u>

1.    <u>Administrative Exhaustion</u>

All of Plaintiff's claims require that he file a timely administrative claim within 300 days of the challenged discriminatory or retaliatory action.  It is undisputed that Plaintiff's administrative charge of discrimination was filed on September 28, 2004.  Accordingly, the discriminatory or retaliatory actions upon which he bases his claims had to have occurred on or before December 3, 2003, and had to have been included in his charge of discrimination.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002) (discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire,

7

as well as retaliatory adverse employment decisions are separate actionable unlawful employment practices; each discrete discriminatory act starts a new 300-day clock for filing charges based on that act).  Plaintiff's argument that events occurring outside of the 300-day filing period should be considered under the continuing course of conduct doctrine is unavailing, as the U.S. Supreme Court expressly abrogated this doctrine in *Morgan.*  536 U.S. at 114.[3]

Accordingly, the only events that could support Plaintiff's claims are the following: (1) the failure to promote him to the Casualty Claims Examiner position in December 2003; (2) Wallen's complaint to Human Resources; (3) the lowering of the performance evaluation in 2004; (4) Plaintiff's resignation.  However, events occurring before December 2003 may be properly considered as background evidence in support of the timely filed claims.  *Morgan,* 536 U.S. at 114.

2.   Age Discrimination

Plaintiff has admitted that no management employees made disparaging comments to him about his age, race, sex, or gender.  Because there is no direct evidence of discrimination, I evaluate Plaintiff's claim using the burden-shifting approach set forth in *McDonnell Douglas.*  For the purposes of the motion for summary judgment, USAA does not dispute that Plaintiff could establish a *prima facie* case of age discrimination with respect to the decision not to promote him to the Casualty Claims Examiner position.

---

[3]*Morgan* recognizes that discrimination claims based on a hostile work environment generally encompass events occurring over a period of time and so are treated differently than claims based on discrete acts.  However, Plaintiff has not alleged discrimination based on a hostile work environment nor set forth facts that could support such a claim.

However, USAA has shown that Plaintiff was not as well qualified for the position as the two finalists ultimately selected[4], which is a legitimate, non-discriminatory reason for the decision.  Plaintiff has presented no evidence to create a genuine issue of fact regarding the qualifications, the interview performance, and the claims audit information upon which the hiring managers relied in their hiring decision, or that those determinations were false or contrary to policy.  Moreover, even if Plaintiff could show modest differences between Plaintiff and the other finalists, the issue is not whether USAA's comparative assessment of the candidates' qualifications were "wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999), *abrogated on other grounds by Morgan*, 536 U.S. at 114.  Thus, the burden shifts to Plaintiff to demonstrate that USAA's stated reason for not promoting him was a pretext for unlawful discrimination.

     To show pretext, Plaintiff may produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy or credence and hence that the employer did not act for the asserted non-discriminatory reasons."  *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1305 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (further

---

[4]Plaintiff apparently only contends that the decision to select the male Hispanic candidate is evidence of age discrimination and that the other candidate's selection was not the result of an age preference, but rather was because of reverse sex discrimination.

sources omitted)).

Plaintiff argues that pretext is shown by a "trend" at USAA in which employees in their fifties were leaving and were replaced by younger employees.  He cites several examples of unconnected personnel changes that he contends constitute evidence of a preference for younger workers.  However, the "facts" that Plaintiff asserts to support this argument are completely unsupported by the record.  Plaintiff's citation to the record provides evidence that two employees in their fifties retired from the company and one was replaced by a younger employee.  Otherwise, there is nothing in the way of deposition testimony, affidavits, discovery responses, or otherwise admissible evidence to show the ages of the other employees who left the company or the ages of those who replaced them, the reasons for the changes, or any facts indicating that any of these personnel changes were discriminatory.  A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" in the pleadings, but rather "the [non-movant's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Plaintiff's unsupported argument is insufficient to create an issue of fact in this regard.  *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.") (citations omitted).

Plaintiff also argues that pretext is shown because of USAA's failure to hire him in several positions he previously sought.  He argues that he "was more qualified than the

10

other candidates," but that some of the positions went to younger candidates (others apparently went to candidates who were female and/or Hispanic but not necessarily younger). Plaintiff's argument suffers from the same infirmities. He has produced some evidence that younger employees were hired for a few of the positions he sought. However, in general, he offers no record support for his allegations that he applied for other jobs within USAA, that the candidates selected were younger than Plaintiff, what the hiring criteria were for specific positions, that he was qualified for the positions, or that he was more qualified than the candidates selected. This again is insufficient to carry Plaintiff's burden under Rule 56(e) to demonstrate a genuine issue for trial regarding USAA's stated non-discriminatory reason for failing to promote him. Accordingly, summary judgment must be entered on this claim.

3.   Reverse Race and Sex Discrimination

A plaintiff alleging a failure-to-promote claim must initially establish a *prima facie* case, demonstrating that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled. *Kendrick*, 220 F.3d at 1226 (10th Cir.2000). However, in a reverse discrimination case, a *prima facie* case requires a stronger showing. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). The Tenth Circuit has held that a plaintiff alleging reverse discrimination "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority," or, alternatively, may produce facts "sufficient to

support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* (*quoting Notari v. Denver Water Dep't*, 971 F.2d 585, 589-90 (10th Cir.1992)).

Plaintiff's facts do not establish a *prima facie* case with respect to the decision not to hire him for the Casualty Claims Examiner position.  Again, Plaintiff's unsupported and conclusory assertion that he was more qualified than the female or Hispanic employees selected for other positions that he sought in the past is insufficient to meet his heightened burden to present facts supporting a reasonable inference that USAA is "one of those unusual employers who discriminates against the majority" or that but for his race or sex he would have been selected for the position.  I note that many of the allegations Plaintiff offers in support of his age discrimination claim, even though not substantiated by the record, directly undermine his reverse discrimination claim, as they seem to show that USAA hires and promotes many male and non-Hispanic employees.  Finally, even if Plaintiff could establish a *prima facie* case, for the reasons stated above, he could not show that USAA's legitimate, non-discriminatory explanation for the failure to promote him was pretextual.

It is not clear whether Plaintiff is also alleging a disparate impact claim with respect to his discrimination claims, as his complaint and response to the motion for summary judgment appear to allege a "pattern and practice" of discrimination.  Disparate impact is an alternate theory for recovery for discrimination, which requires a plaintiff to show that a facially neutral employment practice falls "more harshly on one group than another and cannot be justified by business necessity." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 939

12

(10th Cir. 2005) (citation omitted).  Plaintiff has not identified an employment practice that he alleges has a disparate impact on any specific group, much less provided evidence demonstrating such disparate impact.  *Id.*  (plaintiffs' evidence showing that their replacements were mostly "young and men" was insufficient to create a genuine issue of fact on claim that employer's assessment testing had disparate impact on women or individuals over 40); *see also Bullington,* 186 F.3d at 1312 (noting that *prima facie* case in disparate impact case "is more rigorous than in a disparate treatment case because a plaintiff must not merely show circumstances raising an inference of discriminatory impact but must demonstrate the discriminatory impact at issue.") (citation omitted).  Accordingly, to the extent that Plaintiff relies on this theory to support his discrimination claims, summary judgment is appropriate.

Finally, Plaintiff cannot base any claim of discrimination on his resignation from USAA.  The undisputed evidence demonstrates that Plaintiff left voluntarily.  Moreover, Plaintiff has not presented facts sufficient to create a genuine issue as to a constructive discharge.  Constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit; such a finding depends on whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee-claimant.  *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005).  Plaintiff's unhappiness at not being promoted to positions that he subjectively believed he was more qualified for than others or being given an evaluation of "Meets Expectations" are not conditions so intolerable that a reasonable person in his position

13

would feel forced to resign.  Plaintiff also turned down numerous offers by the company to discuss his concerns and to investigate the reasons why he had not received the promotions he desired, which strongly undermines his argument that he had no choice but to resign.  Plaintiff also argues that he was "forced to leave" because the company started to require employees to sign arbitration agreements as a condition of their employment. However, no evidence is presented to suggest that being required to sign an arbitration agreement is "intolerable;" moreover, Plaintiff's own deposition testimony contradicts this argument, as he expressly testified he did not leave for this reason.

4.     Retaliation

        Plaintiff has alleged that he suffered retaliatory adverse employment actions as a result of his remarks in December 2003 about his belief that he was not selected for the position based on his age, sex, or race.  Specifically, he alleges that Wallen's complaint to Human Resources that she thought he had inappropriately used the word "Oriental" in his comments and the lowering of his performance evaluation in 2004 were retaliatory.  In addition, although these allegations were not in his charge of discrimination, he seems to argue that the implementation of the arbitration requirement constituted retaliation.

        As part of his *prima facie* case, Plaintiff must establish that these actions constituted materially adverse employment actions, defined as an injury or harm that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Rwy Co. v. White*, 126 S. Ct. 2405 (2006).  Although on its face a "Meets Expectations" evaluation does not appear to be materially adverse, as it is considered to indicate satisfactory performance, Plaintiff alleges that he would be

14

ineligible for a promotion with such a rating.  This could arguably constitute a harm or injury sufficient to dissuade a worker from making or supporting a charge of discrimination. However, once again, Plaintiff's evidence is not sufficient to demonstrate a genuine issue of fact in this regard.  He apparently bases this conclusion on one conversation with a human resources employee who reported that candidates had been selected for interviews because they had EE ratings.  Plaintiff did not apply for any other positions after receiving his ME evaluation and has presented no evidence of an official policy or practice that would prevent the hiring of an employee with an ME rating.[5]  Accordingly, no reasonable jury could find that Plaintiff was "ineligible" for any other promotions.

Moreover, even if the performance evaluation were considered to be materially adverse, Plaintiff has provided no facts to demonstrate a causal connection between his protected activity and his evaluation.  Although there is a temporal proximity between these events, which could support an inference of causation, he has provided no evidence to demonstrate that Fletcher, who made the decision to lower his evaluation to an ME rating, knew of his complaint. *Kendrick*, 220 F.3d at 1235.  Further, even if Plaintiff could establish a *prima facie* case, he has identified no facts that would indicate that USAA did not act in good faith in assigning him the ME rating and that this was a pretext for discriminatory retaliation.

In addition, Wallen's complaint to management cannot be construed as a materially adverse action.  Plaintiff has not provided evidence that the complaint was not in good

---

[5]I note that several of the candidates selected for interviews for the Casualty Claims Examiner positions had ME ratings, which further undermines Plaintiff's argument.

faith or that it resulted in any injury or harm, particularly since it was found to be a misunderstanding. Finally, Plaintiff's argument that retaliation is shown because if he had stayed with USAA, he would have had to sign an arbitration agreement is unavailing. Even if signing an arbitration agreement were considered to be materially adverse, Plaintiff has presented no facts indicating that the implementation of a company-wide policy had any connection to his complaint.

5.    State law claims

Plaintiff has not alleged any claims arising under common law that are distinguishable from his discrimination causes of action, which fail for the reasons set forth above. Thus, these claims are also dismissed. *Caspar v. Lucent Technologies, Inc.* 280 F.Supp.2d 1246, 1250 (D. Colo. 2003).

Accordingly, it is ordered that the motion for summary judgment filed by USAA (doc no. 45) on May 22, 2006 is granted and this case is dismissed with prejudice.

DATED at Denver, Colorado, on February 5, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge

16